United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEFERI KITAW BEYENE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JANET NAPOLITANO, Secretary, United States Department of Homeland Security; ALEJANDRO MAYORKAS, Director, United States Citizenship and Immigration Services; JERRY HEINAUER, Director of Nebraska Service Center,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　／ | No. C 12-01149 WHA<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this mandamus and declaratory-relief action, arising out of an application for adjustment of immigration status, defendants move to dismiss plaintiff's complaint for lack of subject-matter jurisdiction and for failure to state a claim. In the alternative, defendants move for summary judgment. Plaintiff cross moves for summary judgment. For the reasons stated below, defendants' motion to dismiss is **DENIED**. Defendants' motion for summary judgment is **GRANTED**. Plaintiff's motion for summary judgment is **DENIED**.

**STATEMENT**

Plaintiff Teferi Kitaw Beyene is a native and citizen of Ethiopia. He entered the United States on a visitor's visa in 2003. On April 26, 2006, an immigration judge granted him asylum (Wilcox Decl. ¶ 3). Thereafter, on May 11, 2007, plaintiff filed an I-485 application to adjust status to become a lawful permanent resident (*id.* ¶ 4). That application remains pending.

1  Plaintiff has filed the instant complaint seeking a writ of mandamus to compel adjudication of
2  his I-485 application.  There is no indication that plaintiff faces a current threat of deportation.
3       Plaintiff admits to joining the Ethiopian People's Revolutionary Party in 1975.  Plaintiff
4  acknowledges while he was a member of the EPRP he "creat[ed] placards and pamphlets,
5  attended leadership meetings and communicated information from leaders to those around
6  [him]."  According to plaintiff he was "no longer involved with EPRP when some members
7  shifted to armed struggle," as was he imprisoned during that period (Beyene Decl. ¶ 5).  The
8  United States Citizenship and Immigration Services has determined that the EPRP meets the
9  definition of a Tier III undesignated terrorist organization under 8 U.S.C. 1182(a)(3)(B)(vi)(III)
10 (Wilcox Decl. ¶ 13).  As a result, it is defendants' view that plaintiff is inadmissible under 8
11 U.S.C. 1182(a)(3)(B)(i)(I) for engaging in terrorist activity, and thereby faces a statutory bar to
12 his adjustment of status, as there is currently no waiver of this inadmissibility ground for asylum-
13 based adjustment of status applications (*id*. ¶ 14).
14      In December 2007, the Consolidated Appropriations Act, among other things, expanded
15 the authority of the Secretary of Homeland Security to exempt individuals from certain terrorist-
16 related inadmissibility grounds.  In response to the Act, USCIS issued policy memoranda in
17 March and July 2008 and February 2009 (Wilcox Decl. ¶ 28).  The March 2008 memorandum
18 instructed that "adjudicators should withhold adjudication of cases that could benefit from the
19 Secretary's expanded discretionary authority under the CAA" (*ibid*.).  Pursuant to this authority,
20 defendants placed plaintiff's application on hold and "intend[] to adjudicate Plaintiff's
21 application for adjustment of status to completion at such time as an exercise of the discretionary
22 exemption authority that would apply to Plaintiff becomes available, and accompanying formal
23 policy guidance authorizing adjudication is issued" (Wilcox Decl. ¶ 32).  (The date on which the
24 hold was placed does not appear in the record.)
25      Plaintiff's application for adjustment of status has been pending since May 11, 2007,
26 approximately five years (Compl. ¶ 1).  However, defendants have conducted plaintiff's
27 preliminary check against the DHS-managed Interagency Border Inspection System that contains
28 records and "watch list" information, processed plaintiff's fingerprints, submitted plaintiff's

name check request to the FBI and the FBI has completed that check, all of which are required steps for processing an application for adjustment (Wilcox Decl. ¶¶ 6, 7, 9).

On March 8, 2012, plaintiff filed the instant complaint for writ of mandamus seeking adjudication of his application for adjustment and alleging a violation of the Administrative Procedures Act for unreasonable delay in adjudicating his application. Defendants move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. In the alternative, defendants move for summary judgment on the ground that the approximately five-year delay is reasonable as a matter of law. Plaintiff moves for summary judgment arguing that the five-year delay is unreasonable as a matter of law and violates the APA.

## ANALYSIS

### 1. DEFENDANTS' MOTION TO DISMISS.

Defendants move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim.

#### A. Subject-Matter Jurisdiction.

Federal courts are courts of limited jurisdiction. As such, a court must dismiss any case if it lacks subject-matter jurisdiction over its claims. FRCP 12(b)(1). The government contends that 8 U.S.C. 1252(a)(2)(B)(ii) strips the court of jurisdiction over "immigration suits that concern decisions or actions that are committed to agency discretion," arguing that decisions regarding adjustment of status are discretionary and thus unreviewable thereunder (Br. 10).

Section 1252(a)(2)(B) provides as follows:

> [N]o court shall have jurisdiction to review — . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

In the instant action, plaintiff seeks a writ of mandamus to compel the government to adjudicate a pending petition for adjustment of status, arguing that "the agency owes him a duty to adjudicate his application — even if that adjudication leads to a denial" (Opp. 3). This order agrees.

3

1  The statute governing adjustment of status of refugees, 8 U.S.C. 1159(b), specifies that
2  the authority to adjust the status of an applicant is within the discretion of the Secretary of the
3  Homeland Security or the Attorney General.  The statute reads:

> The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who — (1) applies for such adjustment, (2) has been physically present in the United States for at least one year after being granted asylum, (3) continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee, (4) is not firmly resettled in any foreign country, and (5) is admissible (except as otherwise provided under subsection (c) of this section) as an immigrant under this chapter at the time of examination for adjustment of such alien.

Plaintiff challenges defendants' failure to adjudicate his application for adjustment within a reasonable time.  Section 1252(a)(2)(B)(ii) removes jurisdiction only over acts "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."

Although the Act commits the actual decision to the agency's discretion, Section 1159(b) does not commit the *pace* of doing so to the agency's discretion.  Neither Section 1159(b) nor any other statute provides the "specified" discretionary authority over the pace of adjudicating applications for adjustment of status that Section 1252(a)(2)(B)(ii) requires.  What is more, 5 U.S.C. 555(b) mandates the adjudication of applications "within a reasonable time." *See also* 8 U.S.C. 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application.").

Defendants argue that they have made a "purposeful determination — as a matter of USCIS's discretion in processing asylee adjustment applications and in accordance with administrative memos — to withhold adjudication of Beyene's Form I-485 Application" (Br. 11).  But, "there is a difference between the [USCIS's] discretion over *how* to resolve an application and the [USCIS's] discretion over *whether* it resolves an application." *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (Chen, M.J.).  To be sure, "[t]he ultimate decision

4

to grant or deny an application for adjustment of status is unquestionably discretionary." *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007) (Armstrong, J.). But, discretion over the pace of adjudicating an adjustment application is not "specified" within the relevant statutes.

Although our court of appeals has not resolved the issue, numerous district courts within its jurisdiction, including in our district, have "rejected the Government's challenge to jurisdiction over the pace of I-485 applications." *See Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1257 (W.D. Wash. 2008) (reviewing numerous district court decisions reaching this conclusion). This order agrees, and holds that the government has a statutorily prescribed duty to adjudicate a pending application for adjustment of status within a reasonable period of time; the duty is not discretionary. As an esteemed colleague wrote, "To hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law." *Liu v. Chertoff*, 2007 U.S. Dist. LEXIS 56021, at *3 (N.D. Cal. 2007) (Breyer, J.). Thus, there is jurisdiction to adjudicate plaintiff's claim for mandatory relief. Defendants' motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

### B. Failure to State a Claim.

Defendants move to dismiss plaintiff's APA claim pursuant to FRCP 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Plaintiff alleges that "[b]y failing to adjudicate [his] adjustment application, Defendants have acted arbitrarily and capriciously and have unlawfully withheld or unreasonably delayed

5

agency action in violation of 5 U.S.C. 706" (Compl. ¶ 10). It is well established that a district court has subject-matter jurisdiction over any sufficiently stated claim for relief under the APA. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–65 (2004). To invoke jurisdiction under the APA, a petitioner must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty. *Ibid.*; 5 U.S.C. 555(b); 701(a)(2). Once a petitioner has proven a right to relief under the circumstances, it is the reviewing court's duty to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. 706(1).

As stated, there is a nondiscretionary duty to adjudicate a pending application for adjustment of status within a reasonable period of time. The only question then, as to the Rule 12(b)(6) inquiry, is whether plaintiff has alleged sufficient facts to show that the agency unreasonably delayed acting on its nondiscretionary duty. Defendants only argument on this point is that plaintiff fails to state a claim for relief because the extended processing of his application inures to his benefit. Plaintiff has alleged otherwise. And at the motion to dismiss stage, plaintiff's allegations are accepted as true.

Plaintiff alleges that, he "applied for adjustment of status to lawful permanent resident . . . on or about May 11, 2007." That application remains pending. He further alleges that (Compl. ¶ 1):

> [l]awful permanent resident status (LPR) confers many privileges not available to asylees. For example, after five years of LPR status, an individual may apply for naturalization as a United States citizen. Benefits accorded a United States citizen include the right to vote, travel with a U.S. passport and hold a federal job. LPR status is a necessary prerequisite for naturalization so any delay in adjudicating the adjustment application also delays naturalization and its attendant benefits.

Plaintiff has pleaded sufficient facts to state a claim of unreasonable delay under 5 U.S.C. 706. As such, there is subject-matter jurisdiction over the APA claim. The motion to dismiss the APA claim for failure to state a claim is therefore **DENIED**.

**2.    CROSS MOTIONS FOR SUMMARY JUDGMENT.**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial

6

burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

It is undisputed that defendants have not adjudicated plaintiff's application for adjustment and that his application has been pending since May 11, 2007. Defendants contend that summary judgment is warranted in their favor because as a matter of law, the delay in adjudicating plaintiff's application is not unreasonable. Plaintiff opposes and cross moves for summary judgment, arguing that the a five-year delay in adjudication of his application "coupled with no indication of when a decision might be forthcoming" is unreasonable, as a matter of law (Opp. 4).

The APA provides for judicial review of agency action that either is not completed "within a reasonable time" or is "unreasonably delayed." Whereas mandamus is an extraordinary remedy, courts will interfere to correct "transparent violations of a clear duty to act." *In re Aiken Cnty*, 645 F.3d 428, 436 (D.C. Cir. 2011). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, 2007 WL 902382, at *2 (N.D. Cal. 2007) (Alsup, J.).

Our court of appeals has adopted a six-factor test for determining when an agency delay is unreasonable under 5 U.S.C. 706(1). *Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting *Telecomms. Research & Action v. FCC* ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984). The six factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply

7

> content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

### A.     A Rule of Reason.

The first *TRAC* factor requires that the time an agency takes to make decisions be governed by a rule of reason. Terrorist-related determinations involving immigration applicants are "not made lightly" and "may be time-consuming." *Islam v. Heinauer*, 2011 WL 2066661, at *7 (N.D. Cal. 2011) (White, J.).

The undisputed evidence shows that (Wilcox Decl. ¶ 27):

> In order to exempt the INA's terrorist-related inadmissibility provisions from applying to a category of individuals or a specific individual, the Secretary of Homeland Security, the Secretary of State, and the Attorney General must consult. Various factors, including national security, humanitarian, and foreign policy concerns, must be weighed carefully before a decision is made. There is much interagency discussion on how best to approach and tailor particular exemptions. The large number of possible exemptions that may be considered, combined with the deliberative nature of the process, causes significant time to pass before adjudications ultimately can take place.

In addition, defendants argue, that from the time plaintiff's application was filed in 2007 until 2008, it was not adjudicated "because of a backlog created by lifting of the annual numerical cap on asylum-based adjustment applications" (Br. 15). There is no evidence on this point.

Still, there is evidence to show the deliberative process for determining whether an exemption applies, though it has not yet benefitted plaintiff, is not a sham. The process has resulted in benefits to 14,393 aliens under existing exercise of exemption authority between mid-2006 and February 29, 2012 (Wilcox Decl. ¶ 29). Between June 2010 and November 30, 2011, USCIS released over 3,500 cases from hold after a group-based review of pending applications on hold under the 2008 memorandum (*id*. ¶ 30).

Generally, courts evaluating the pace of I-485 application determinations that have been placed on hold due to terrorist-related inadmissibility findings have found delays approaching

8

ten years to be unreasonable. *See e.g., Mugomoke v. Curda*, 2012 WL 113800, at *9 (E.D. Cal. 2012) (denying defendants' motion for summary judgment for a nearly seven-year delay); *Tewolde v. Wiles*, 2012 WL 750542, at * 9 (W.D. Wash. 2012) (denying defendants' motion for summary judgment for a nearly nine-year delay). On the other hand, courts have found delays of two, three, and four years to be reasonable. *See e.g., Sagier v. USCIS*, No. 11-5537, ECF No. 19 (N.D. Cal. 2012) (Corley, M.J.) (four-year delay); *Islam*, 2011 WL 2066661, at *6–8 (three-year delay); *Hassane v. Holder*, 2010 WL 2425993, at *5 (W.D. Wash. 2010) (nearly two-year delay). Courts have found six-year delays to be unreasonable. *Alshawmsawi v. Holder*, 2011 WL 1870284, at *2–3 (D. Utah 2011) (not applying *TRAC* factors).

Recently, a court in our district found a five-year delay to be unreasonable where defendants provided no evidence regarding the likelihood of an exemption and the plaintiff suffered financial harm, of which there is no evidence in our case, and emotional harm while awaiting adjudication of his application. *Qureshi v. Napolitano*, 2012 U.S. Dist. LEXIS 90811, at * 18 (N.D. Cal. June 28, 2012) (Gonzalez Rogers, J.) ("Here, however, the Court finds that Defendants' failure to provide any indication of when Plaintiff can anticipate adjudication of his Application beyond the current five years is not reasonable.") (citing *Mugomoke*, 2012 WL 113800, at *7).

Plaintiff's application for adjustment of status is on hold to determine whether he may qualify for an exemption under the Act. Defendants have not shown that the EPRP is under consideration for an exemption or that plaintiff has a possibility of receiving an individual exemption. Defendants merely hold out the possibility that at some unspecified point in the future, an exemption that would be beneficial to plaintiff may be considered. At least one court has held, in a case where plaintiff's application had been pending for seven years — two years longer than our plaintiff's application has been pending — that "for defendants to hold the application indefinitely in case they might, at some unspecified point in the future, consider an exemption does not constitute a rule of reason that allows this court to find the delay reasonable." *See Mugomoke*, 2012 WL 113800, at *7. Neither party has specified the date that defendants placed plaintiff's application on hold. His application has been pending for

9

approximately five years and on hold pursuant to agency policy for some lesser period of time. *See Khan v. Scharfen*, 2009 WL 941574, at *8 (N.D. Cal. 2009) (Conti, J.) ("[T]he Court need only look at the time since the Government . . . put adjudication on hold"). There is no reason to disbelieve defendants' evidence that the exemption process is a lengthy one, requiring significant agency consultation. Thus, at this time, factor one weighs in defendants' favor.

Plaintiff argues that even if in some cases it may be reasonable to hold an application for several years to determine if an exemption for inadmissibility is warranted, such a delay is unreasonable here because he does not need an exemption because he did not provide material support to a terrorist organization. To be clear, this order does not consider whether defendants must grant or deny plaintiff's I-485 application because he engaged or did not engage in terrorist-related activity. Such a claim is not alleged in the complaint and this order does not rule on whether there would be jurisdiction to adjudicate that issue.

### B. Congressionally-Mandated Timetable.

The second *TRAC* factor — a Congressional timetable or other indication of speed with which Congress expects an agency to proceed — weighs in plaintiff's favor. Although Congress has not provided a definite timetable for agency action, "[i]t is the sense of Congress" that an immigration benefit application should be processed within 180 days of the initial filing of the application. 8 U.S.C. 1571(b). Plaintiff's application has been pending for approximately five years. Standing alone, this factor weighs in plaintiff's favor.

### C. Effect on Human Health and Welfare and Prejudice.

The third *TRAC* factor which considers the potential effect of the delay on human health and welfare, overlaps with the fifth factor, which considers the nature and extent of the interests prejudiced by delay. The factors are evaluated together. Defendants argue that plaintiff is not prejudiced by the hold on his application because if forced to adjudicate his adjustment of status application now, defendants would likely deny his application (Wilcox Decl. ¶ 31). Defendants further contend that there is a strong interest in following an act of Congress keeping plaintiff's application on hold pending future exemption-related guidance. In addition, defendants "note" that plaintiff's case involves an applicant who has admitted membership "which is of such

10

1    national security concern to the United States as to warrant categorization as a terrorist

2    organization" (Reply Br. 5).

3          Plaintiff counters that while his application remains in stasis he is not accruing eligibility
4    for U.S. citizenship and all its attendant benefits, including the right to travel on a U.S. passport,
5    the right to vote, and being eligible for "more jobs" (Beyene Decl. ¶ 4).  Plaintiff further claims
6    prejudice in the delay in adjudication of his application because he is "fully prepared for any
7    decision to be a denial; however, [he] intends to pursue administrative or judicial review of any
8    denial" (*id*. ¶ 7).  Indeed, plaintiff cannot challenge what he believes to be defendants' erroneous
9    determination that he provided material support to a terrorist group until such time as his
10   adjustment of status application has been adjudicated.  Plaintiff's wife and three children are all
11   permanent residents and will be eligible to apply for naturalization in a few months (*id*. ¶ 3).

12         Plaintiff has not shown any immediate risk of deportation or impairment to his physical,
13   financial, or safety needs if his application is not immediately adjudicated.  The alleged harm is
14   that he will not be able to obtain LPR status and citizenship, if ever, as quickly as he desires.
15   This case is distinguishable from *Qureshi*, wherein the plaintiff's wife and nine-year old
16   daughter lived in Pakistan and the plaintiff had to regularly travel under a refugee travel
17   document to visit them, fearing for their safety.  Additionally, the plaintiff in *Qureshi* would not
18   be able to petition to bring his wife and daughter to the United States until he became an LPR;
19   thus, there would be a delay in possible family reunification.  The plaintiff in *Qureshi* also
20   suffered financially while awaiting adjudication of his application.  Our plaintiff's wife and
21   children have LPR status, and plaintiff has not put forward evidence of financial harm resulting
22   from the delay in adjudication of his application.

23         According to defendants, each of plaintiff's requests for a work permit and for travel
24   documents has been approved (Wilcox Decl. ¶ 33).  Thus, plaintiff can earn a living and travel in
25   his current status.  In their reply brief, however, defendants have stated that if USCIS denied
26   plaintiff's adjustment application he would "be ineligible for travel and work authorization"
27   (Reply Br. 2).  This would be a significant harm to plaintiff, but one which he does not address.
28   There are important interests at stake for both parties.  Plaintiff does not acknowledge any harm

11

from the possible, and even likely denial of his application, he only addresses the harm he is currently suffering from being in limbo. Those harms are primarily emotional and result from deprivation of interests plaintiff would have if he became an LPR or citizen. But there is no guarantee that plaintiff would be granted either status. On this record, the third and fifth factors do not tip strongly in favor of either party.

### D. Effect of Expediting Adjudication.

The fourth *TRAC* factor requires consideration of the effect of expediting adjudication of plaintiff's application on agency action of a higher or competing priority. Defendants contend that requiring expedited adjudication would intrude on USCIS's ultimate adjustment decision, which is in defendants' discretion, and on USCIS's competing interest of whether to grant an exemption. But plaintiff is clear that he "merely seeks a decision based on what the law currently is rather than on what it may be in the dim and indeterminable future" (Opp. 10–11). However, defendants proffer that immediate adjudication of plaintiff's application would intrude on the "ongoing processes and agency priorities, jeopardizing Defendants' interests in the orderly consideration and administration of potential exemptions" (Br. 19). This factor tips in defendants' favor.

### E. No Impropriety.

Though the Court need not find impropriety "lurking behind agency lassitude," consideration of possible impropriety is the sixth TRAC factor. Here, plaintiff admits that "by all indications the agency is trying to be fair in withholding adjudication" of plaintiff's application for adjustment (Opp. 5).

\* \* \*

Plaintiff argues, that he is not "asking for any action that is not already contemplated in agency policy" and that he is not asking that "defendants accelerate their deliberations and devise an exemption that would cover his situation as defendants see it," rather, he is asking to have his application adjudicated immediately. In support, he points to the February 2009 policy memorandum which provided that:

> [i]f the adjudicating officer receives a request from the beneficiary and/or attorney of record to adjudicate a case on hold per this

> policy (including the filing of a mandamus action in federal court) . . . the case should be elevated through the chain of command to appropriate Headquarters personnel. Guidance will be provided by USCIS headquarters on whether or not the case should adjudicated.

In order for this Court to compel the agency to act — an extraordinary remedy — it must first find that the delay in processing plaintiff's application is one that is unreasonable, as determined in our court of appeals by the consideration of the *TRAC* factors. Thus, the mere fact that plaintiff is asking for something that is "contemplated by agency policy" is not dispositive.

Considering all of the *TRAC* factors, this case presents a close call. Thus, on this record, with respect to the motions for summary judgment, no relief will be granted to plaintiff at this time. Although the government's Rule 56 motion is now granted, this will be without prejudice to a new action in the future if, for example, the agency has not made a final adjudication within another 12 months.

## CONCLUSION

For the above-stated reasons, defendants' motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim is **DENIED**. Defendants' motion for summary judgment is **GRANTED**. Plaintiff's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 13, 2012.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

13